## Commonwealth *vs.* Martin Urban.

No. 04-P-1695.

Suffolk. January 19, 2006. - September 11, 2006.

Present: Greenberg, Brown, & Mills, JJ.

Further appellate review granted, 448 Mass. 1101 (2006).

*Rape. Mistake. Practice, Criminal,* Instructions to jury. *Intoxication. Consent.*

In the circumstances of the trial of indictments charging rape, the judge's instructions to the jury regarding the relationship between intoxication and consent were fatally flawed and prejudicial, requiring reversal of the defendant's convictions. [302-308]

Indictments found and returned in the Superior Court Department on September 13, 2002.

The cases were tried before *Elizabeth B. Donovan,* J.

*R. Bradford Bailey* for the defendant.

*Amanda Lovell,* Assistant District Attorney, for the Commonwealth.

Brown, J. The defendant was convicted by a Superior Court jury of rape (two counts).[1] See G. L. c. 265, § 22(*b*). On appeal, he alleges that the trial judge erred by (1) misstating the law in her charge on the relationship between intoxication and consent; (2) failing to give an instruction on mistake of fact; (3) excluding certain extrajudicial statements; (4) failing to give a proper limiting instruction with respect to fresh complaint evidence; and (5) failing to give an instruction on the trial judge's role. He also claims that the prosecutor's closing exceeded the bounds of permissible argument. We agree that the judge's charge on consent was fatally flawed and reverse on that basis.[2]

---

[1]The defendant's convictions were obtained at a retrial. His first trial ended when the jury were unable to agree upon a verdict.

[2]In view of the outcome here, it is not necessary to address the defendant's

Deciding as we do, we focus only on the judge's instructions to the jury. Relevant facts are included in our analysis as required.

The chief disputed issue at trial was whether the complainant had consented to engage in sexual intercourse with the defendant; more specifically, whether the complainant, due to intoxication, had the mental capacity to consent. The Commonwealth took the position that the complainant, at the time of the alleged rape, was sufficiently under the influence of drugs and alcohol as to be incapable of consent.[3] For his part, the defendant maintained that, while the complainant had indeed used drugs or alcohol on the evening in question, she was nonetheless sober enough to consent to intercourse and had, in fact, done so.

The conflict surrounding this point was the subject matter of numerous discussions between the parties and the trial judge concerning the precise contents of the judge's charge on the relationship between intoxication and consent. During the initial charge conference, which *preceded* closing argument (the relevance of which will become clear presently) the following exchange occurred:

remaining claims. We would hope that the allegations regarding the prosecutor's closing are unlikely to recur at any retrial. The boundaries of permissible argument are well established, and we are confident that the Commonwealth will hew to these marked limits. As to the claims regarding various evidentiary matters, including the admission of fresh complaint evidence and the restrictions imposed on the admission of certain other extrajudicial statements, we see no obvious errors. We also see no error in the judge's denial of the defendant's request for an additional instruction on the role of the trial judge. In any event, all of these matters will be open for reconsideration by the trial judge upon a retrial. It would be speculative for us to assume that they will be resolved in precisely the same manner. In addition, other evidence might be admitted that would affect the analysis of these claims. Further consideration, if any, of these issues must await subsequent proceedings in the Superior Court. As for the defendant's claim of entitlement to an instruction on mistake of fact as to consent, we specifically decline to reach that issue. We note only that our reading of *Commonwealth* v. *Lopez*, 433 Mass. 722, 727-732 (2001), and *Commonwealth* v. *Moran*, 439 Mass. 482, 489-490 (2003), leads us to doubt that such an instruction would ever be required in a case where lack of consent is proved by incapacity.

[3]The Commonwealth also argued that the complainant generally had failed to consent.

DEFENSE COUNSEL: "Are you charging, Judge, that by reason of a person being intoxicated they can't give consent?"

THE COURT: "No. It's a fact [the jury] can consider in determining whether or not a person was able to give consent. They have to make that determination. That's a question of fact, whether she — obviously there's different degrees of drunkenness."

DEFENSE COUNSEL: "That's the point."

THE COURT: "And there are, there are. And if a person is so drunk that they're not capable of consenting, then the jury can consider that on the issue. But they have to make that finding as to whether she was drunk and, if so, what degree of drunkenness or stupefaction or helplessness there was. That's solely for them. I'm just going to tell them what the law is."

DEFENSE COUNSEL: "What you just said now, is that how you will tell them?"

THE COURT: "Basically."

The judge, at least up to this point, had correctly articulated the governing law as it has existed in Massachusetts for more than 130 years. In determining whether a person is "incapable of consenting" to sexual intercourse as a result of intoxication, the inquiry focuses on whether that person is "wholly insensible . . . in a state of utter stupefaction . . . *caused* by drunkenness . . . or drugs" (emphasis supplied), a formulation derived from *Commonwealth* v. *Burke*, 105 Mass. 376, 380-381 (1870). That is to say, the question is not merely whether a person is intoxicated, but whether *due to intoxication*, a person has been rendered physically or mentally "incapable of consenting." *Ibid.* Where such a finding is made, a conviction for rape lawfully may be premised "on proof only of 'such force as was necessary to effect the purpose.' " *Commonwealth* v. *Helfant*, 398 Mass. 214, 221 (1986), quoting from *Burke, supra* at 377. In conducting this inquiry, a jury necessarily must assess the degree of the complainant's intoxication for the purpose of determining whether the high standard imposed by *Burke, supra* at 380-381, has been met.

We recently confirmed the continuing vitality of this approach in *Commonwealth* v. *Molle*, 56 Mass. App. Ct. 621, 626-627 (2002). In *Molle, supra,* relying on *Burke, supra,* we noted that where, due to intoxication, the question of a rape victim's capacity to consent is legitimately in dispute, a judge should instruct the jury to determine whether the victim was "wholly insensible so as to be unable [to] consent[] . . . [by] consider-[ing] what *state* of intoxication, if any, [the victim] was in at the time of the incident alleged" (emphasis supplied).[4] A similar instruction was upheld in *Commonwealth* v. *Simcock,* 31 Mass. App. Ct. 184, 194 (1991) ("using such force as is necessary to accomplish his purpose while knowing that she is *utterly senseless* so as to be unable to consent" [emphasis supplied]). See *Commonwealth* v. *Ascolillo,* 405 Mass. 456, 464 (1989) (proper charge on incapacity to consent drawn from *Burke*).

In anticipation of a charge that, like the instruction recommended in *Molle, supra* at 627, and the instruction used in *Simcock, supra,* emphasized the jury's duty to determine not merely whether the complainant was intoxicated, but whether she was so intoxicated as to be rendered "wholly insensible" and unable to consent, defense counsel readily conceded in his closing that the complainant had been drinking: "There's no question that that night [the complainant] was drunk." However, defense counsel then devoted virtually the entire balance of his closing to a meticulous rebuttal of the government's suggestion that the complainant was so impaired as to be deemed "wholly insensible." By way of example, defense counsel argued:

> "[The government] would have you believe that at this point in time [the complainant] was out on her feet, she's dead drunk and whatever. On the ride over to Sison and Urban's home, what do you hear? You hear out the window of Dr. Urban's car, on the right-hand side, [the complainant] yells over to Cookie Faris driving Dr. Sison's car, because he's drunk; she's sober. She said she only had one drink that night . . . she said, she was the designated

---

[4]In *Molle, supra* at 627, we concluded that the instruction, although unwarranted and incomplete, could not have given rise to a substantial risk of a miscarriage of justice in that case.

driver that night.- [The complainant] yells out the window, 'Hey, Cookie, you shouldn't be driving. You haven't got a license.' Now what does that tell you . . . about the mental acuity of [the complainant]? What does it tell you about whether or not she's awake or asleep? What does it tell you about how drunk she is . . . ?"

Defense counsel continued in the same vein for much of the remainder of his argument, citing many specific examples from the evidence tending to suggest that the complainant, while intoxicated, was by no means "wholly insensible."

However, when the judge thereafter instructed the jury on the relationship between intoxication and consent, she departed significantly from her earlier proposed instruction, stating simply:

> "If, by reason of sleep, or intoxication, or drunkenness, or stupefication [*sic*], or unconsciousness, or helplessness, a person is incapable of consenting, an act of sexual intercourse occurring with that person during such incapacity, is without the valid consent of the incapacitated person."

The defendant objected to the judge's instruction:

> DEFENSE COUNSEL: "We spoke of this earlier, judge, when you give the thing about the unconscious [*sic*], and all the rest of it, I asked you earlier, and I guess this is my objection to the charge that you gave, that you didn't specify that the level of intoxication is for [the jury] to determine."
>
> ". . .
>
> THE COURT: "Okay, I'll say that [the jury has] to determine the level of intoxication, because some people could be drunk and still be capable of consenting."

The judge subsequently gave a supplemental charge, but failed to augment her instruction on the crucial issue of consent as promised. Indeed, the judge said nothing about the disputed point. Again, defense counsel objected. The trial judge simply stated: "I'm not going to further instruct on the levels of intoxication, I think it was covered." This was error.

The judge correctly responded to defense counsel's initial objection: "the jury has to determine the level of intoxication, *because some people could be drunk and still be capable of consenting*" (emphasis supplied). Unfortunately, the judge's actual charge easily could have been interpreted to convey the opposite meaning; i.e., that whenever a person is intoxicated, that person, as matter of law, is incapable of consenting to sexual intercourse. In the first instance, by listing intoxication and drunkenness alongside sleep, stupefaction, unconsciousness, and helplessness as potential bases for a finding of incapacity, the judge created the risk that jurors would equate these conditions, at least as they bear on the question of consent. Needless to say, the latter forms of impairment — sleep, stupefaction, unconsciousness, and helplessness — ordinarily would altogether preclude any possibility of voluntary consent. The jury might have improperly assumed that the law, at least, takes the same view of drunkenness and intoxication.

Finally, and perhaps most important, the judge's charge was defective insofar as it lacked any reference to the "wholly insensible" language derived from *Burke*, 105 Mass. at 380. See *Molle*, 56 Mass. App. Ct. at 626 (charge on incapacity to consent should include the "wholly insensible" language contained in *Burke*). While the failure to include this precise locution may be excused in particular cases, a judge is nonetheless required to emphasize through comparable words the high standard that must be met to support a finding of incapacity to consent based on intoxication. In *Simcock*, 31 Mass. App. Ct. at 194-195, for example, we deemed the phrase "utterly senseless so as to be unable to consent" a permissible alternate construction. However, we see no adequate substitute in the judge's charge here for the traditional formulation from *Burke, supra*. Thus, even if the jury understood that they were required to assess the degree of the complainant's intoxication in determining her capacity to consent — a dubious assumption as we have indicated already — we are not confident that the jury also appreciated the high degree of intoxication required to negate the capacity to consent; i.e., that the complainant must be "wholly insensible." For all of the foregoing reasons, the disputed charge amounts to error.

Having concluded that the judge's charge was infected with error, and in view of the defendant's undisputed timely objections, it remains only to consider whether the misstep was prejudicial, likely affecting the outcome of the defendant's trial. See *Commonwealth* v. *Cruz,* 445 Mass. 589, 591 (2005) (error not prejudicial if it "did not influence the jury, or had but very slight effect"). After a careful review of the record, we believe that the error was indeed prejudicial. Our conclusion in this regard rests on multiple considerations.

In the first instance, the error ran to the central point in dispute at trial; viz., capacity to consent. Both sides acknowledged that the defendant and complainant had engaged in sexual relations. Likewise, both parties agreed that the complainant did not make any outward sign that the acts that gave rise to the charges here were anything but consensual. To prove lack of consent, the Commonwealth devoted a substantial portion of its presentation to establishing that the complainant was utterly incapacitated by drugs and alcohol and was, therefore, unable to consent. As the government argued in its closing with respect to the complainant's condition at the time of the alleged attack: "She's drunk, ladies and gentleman, and she's *helplessly drunk.* She's [*sic*] not, like I said to you, just a case of a man taking advantage of a woman who's tipsy, *she's helpless*" (emphasis supplied). The defendant, as noted already, likewise made this issue the centerpiece of his own summation. In these circumstances, we cannot say with confidence that the error was unlikely to have affected the jury's deliberations.

Further, to the extent that the error in the charge might have relieved the Commonwealth of at least a portion of its burden of proof, the misstep implicates due process concerns. Proof of lack of consent is an element of rape, and a finding of incapacity satisfies that element as matter of law. To the extent that the jury might have misunderstood the judge's charge to indicate that mere proof of intoxication, or proof of intoxication short of impairment that renders the complainant "wholly insensible," satisfies the government's burden in this regard, the instruction essentially redefined the crime of rape. Where an error in a jury charge eliminates a requisite element of an offense, at least where that element is contested, the conviction cannot stand.

Finally, the error was compounded by the fact that the defendant formulated much of his closing statement based on the judge's assurances that she would provide an instruction along the lines discussed during the charge colloquy. In view of the charge actually given, the defendant's arguments concerning the extent of the complainant's intoxication amounted to potentially damaging concessions. The judge, in effect, induced the defendant to place his head in the proverbial lion's mouth. Even were an instruction based on the principles delineated in *Burke*, 105 Mass. at 380-381, not required here, having promised a charge that emphasized the jury's obligation to assess the degree of the complainant's intoxication in determining her capacity to consent, and having led the defendant to rely on that promise, the judge created a separate basis for reversal by failing to give such a charge. See *Commonwealth* v. *Sena*, 29 Mass. App. Ct. 463, 468 n.7 (1990) (suggesting that a judge's failure to give a promised jury charge, where the defendant relied on that promise in formulating trial strategy, may be reversible error).

This was a very close case, involving as it did a pure battle of credibility between the complainant and defendant. The judge's instruction on a crucial issue — if not the crucial issue — was seriously flawed. The judge's misstatements of the law did not merely confuse the legal standards with respect to the capacity to consent, it potentially imposed a burden-reducing presumption with respect to that important issue. Finally, by seriously misleading the defendant about the ultimate contents of her charge, the judge undermined a key component of the defense strategy. All of this could have been avoided had the judge merely followed the instructions approved in prior cases.

*Judgments reversed.*

*Verdicts set aside.*