# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

No. 201500249

————————————

## UNITED STATES OF AMERICA

Appellee

v.

## ALFREDO SOLIS

Staff Sergeant (E-6), U.S. Marine Corps

Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel L.J. Francis, USMC.
For Appellant: James S. Trieschmann, Jr., Esq.;
Major Benjamin A. Robles, USMC.
For Appellee: Lieutenant Commander Robert Miller, JAGC, USN;
Captain Matthew M. Harris, USMC.

————————————

Decided 11 August 2016

————————————

Before PALMER, MARKS, and FULTON, *Appellate Military Judges*

————————————

## PUBLISHED OPINION OF THE COURT

————————————

FULTON, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification each of violating a lawful general order and sexual assault, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892 and 920. The members sentenced the appellant to 24 months' confinement, reduction to pay grade E-1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

Corrected Opinion Issued 16 August 2016

The appellant raises the following assignments of error (AOE):[1]

I. Article 120(b)(3)(A) of the UCMJ is unconstitutional because the language "incapable of consenting to the sexual act because she was impaired by . . . alcohol" is unconstitutionally vague.

II. The evidence is factually and legally insufficient to sustain the appellant's conviction for sexual assault.

III. It was plain error when the military judge admitted evidence of the victim's prior, unrelated molestation without instructing the members on its permissible use.

IV. The military judge abused his discretion when he allowed messages from the victim's Facebook account into evidence without the proper foundation.

V. Certain command, investigative, and prosecutor actions including altering evidence against the appellant amounted to prosecutorial misconduct.

VI. Members' responses at *voir dire* and existing working relationships with the trial counsel amounted to actual or implied bias.

We find no error and affirm.

## I. BACKGROUND

The appellant was a staff sergeant in the Marine Corps assigned to recruiting duty in Southern California. In June 2012, the appellant was the primary recruiter for LH, a female high school student. The two met about once a week. During a recruiting function, LH told the appellant that she had always been "somewhat poor," and that financial considerations were one of the main reasons she was joining the Marine Corps. The appellant told her that he might have an odd job related to sales that could help meet her expenses during her last year of high school. In late November 2012, LH enlisted, becoming a "poolee" in the Delayed Entry Program (DEP).

After becoming a poolee, LH had little contact with the appellant until February 2013. On 24 February 2013, the appellant sent LH a Facebook message telling her she could earn $200.00 in one weekend by selling wrestling gear with him at a wrestling tournament in Fresno, California. LH agreed to the offer.

---

[1] Appellant's Brief of 29 Jan 2016 at 1-2. The appellant raises AOEs V and VI pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

On the morning of 8 March 2013, the appellant, wearing civilian clothes and driving his personal vehicle, picked up LH at her house. The two drove to a parking lot where they were joined by a civilian friend of the appellant and several wrestlers who were participating in the tournament. The appellant, his friend, LH, and the wrestlers traveled in the friend's SUV to a hotel in Fresno California, about three-and-one-half hours away from LH's home. The group checked into the hotel. The appellant's friend paid for three rooms—one for himself, one for the wrestlers, and one for the appellant and LH. After checking in, the appellant, his friend, and LH ate dinner at Hooters. The appellant drank at least one beer, and LH drank soda.

After dinner, the appellant and LH went to a nearby convenience store where the appellant purchased a bottle of Jägermeister alcohol, two cans of Red Bull energy drink, and plastic cups. Back in the hotel room, the appellant put the Jägermeister on ice and left the room. While the appellant was gone, LH smoked "medical grade" marijuana. Upon returning to the room, the appellant realized LH had been smoking marijuana, but took no action. Instead, he taught LH how to play a drinking game using Jägermeister and Red Bull. LH drank approximately nine small cups and three larger "penalty cups" of Jägermeister and Red Bull while playing the game. LH, who had never combined alcohol and marijuana before, became dizzy and felt like her body "was slowly going under an anesthetic."[2] She grabbed a coffee table, turned around, and managed to take two or three steps to a couch. LH "plopped" onto the couch, "just kind of laying down and kind of sitting up at the same time."[3] LH's last memory before she was assaulted was leaning on the couch's armrest, staring at the turned-off television, and trying to stay awake.

LH's next memory was slowly waking face-up on the bed and looking at the ceiling with "tunnel vision."[4] LH slowly returned to her senses and realized that her pants and underwear were off and the appellant was on top of her having sexual intercourse with her. LH was unable to push him off and started cursing at him. The appellant responded by saying "just let me finish."[5] After LH continued to curse at and push the appellant, he got off of her and walked toward the bathroom. LH fell asleep again and woke up in the morning under a sheet, still naked from the waist down.

---

[2] Record at 392.

[3] *Id.* at 393.

[4] *Id.* at 394.

[5] *Id.* at 395.

3

LH, who had no cell phone, credit card, or bank account of her own, and whose mother did not own a car, spent the rest of the weekend with the appellant in Fresno, helping him sell wrestling gear at the tournament. She did not report that she had been sexually assaulted. About a week after the tournament, the appellant paid LH $200.00 in cash for her work.

In May or June 2013, LH and her boyfriend were talking about the future of their relationship and contemplating becoming engaged. During the discussion, LH disclosed that the appellant had sexually assaulted her in Fresno. LH told two other friends about the assault over the course of the summer and, with their encouragement, decided to tell the Marine Corps about the assault.

In early July 2013, as LH's boot camp departure date approached, LH returned to the recruiting station and underwent the "moment of truth," during which recruiters encourage poolees to disclose any latent problems with their enlistments, such as recent drug use. When a recruiter told LH that her hair would be tested for drugs at boot camp, LH became worried her marijuana use as a poolee would be discovered. So she revealed some of her more recent marijuana use to the recruiters, believing that it would be better for her to disclose it then, even though she might require an additional waiver. Although her recruiters requested another waiver for marijuana use, the waiver was denied and LH was discharged from the DEP.

In August 2013, after her discharge, LH returned to the recruiting station and told a recruiter that the appellant sexually assaulted her in Fresno.

During direct examination, trial counsel asked LH if she could explain why she did not tell anyone about the assault the day after it happened. LH answered that she was sexually molested as a young child—a fact not previously shared with trial counsel, defense counsel, or law enforcement. The military judge then held a closed session under MILITARY RULE OF EVIDENCE 412, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). LH testified that when she was between four and six years old, a man who shared her house touched her genitals and forced her to touch his genitals on more than ten occasions. LH said the man partially penetrated her vulva with his fingers but did not remove her pants.

The military judge permitted trial counsel to elicit this testimony from LH in front of members. LH explained that she never told her mother about the prior abuse because she did not want to burden her. The military judge also permitted the civilian defense counsel to cross-examine LH extensively about the prior abuse, whether it resulted in any kind of treatment or diagnosis, and the degree to which memories of it intruded on her thoughts at the time of the charged assault.

4

## II. DISCUSSION

### A. Vagueness of Article 120(b)(3), UCMJ

The appellant asserts that Article 120(b)(3), UCMJ, is unconstitutionally vague both on its face and as applied to him. We review the constitutionality of a statute *de novo*. *United States v. Disney*, 62 M.J. 46, 48 (C.A.A.F. 2005).

A statute may be unconstitutionally vague for either of two reasons: first, if it fails to give a person of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; second, if it authorizes or encourages arbitrary or discriminatory enforcement. *Hill v. Colorado*, 530 U.S. 703, 732 (2000). We hold that Article 120(b)(3) is not unconstitutionally vague on its face or as applied to the appellant's case.

1. *Facial challenge*

The appellant argues that Article 120(b)(3) is unconstitutional on its face because there is no way for a person of common intelligence to determine when another person is impaired by alcohol such that they are incapable of consenting to a sexual act.

The statutory text at issue is as follows:

Article 120—Rape and sexual assault generally

. . . .

(b) Sexual Assault.  Any person subject to this chapter who—

. . . .

(3) commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to—

(A) impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person

. . .

(B) . . . is guilty of sexual assault . . . .

The appellant argues that the statute does not "draw the line" that would determine whether a person's degree of impairment renders that person no longer capable of consenting to sexual conduct.[6] But by focusing narrowly on the term *impaired*, the appellant fails to appreciate that the statute does not

---

[6] Appellant's Brief at 7.

proscribe sexual acts with impaired people, but rather with people incapable of consenting to the conduct at issue because of their impairment—and even then, only when the inability to consent is known, or reasonably should be known, to an accused.

The word *incapable* is not defined by the statute. But a person of ordinary intelligence would understand by the term's plain meaning that sexual conduct with a person who lacks the ability to consent is proscribed. *See United States v. Pease*, 74 M.J. 763, 770 (N-M. Ct. Crim. App. 2015), *aff'd* 75 M.J. 180 (C.A.A.F. 2016) (defining "incapable of consenting" as "lack[ing] the cognitive ability to appreciate the sexual conduct in question or the physical or mental ability to make [or] to communicate a decision about whether they agreed to the conduct"). The statute defines consent as "a freely given agreement to the conduct at issue by a competent person." Art. 120(g)(8)(A), UCMJ. Additionally, the fact that Article 120(b)(3)(A) requires that an accused know or should reasonably know that another person is incapable of consenting makes the statute even more definite. *See Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."). We find that Article 120(b)(3) provides a person of reasonable intelligence fair notice of what conduct it proscribes.

Similarly, the statute is not so standardless that it invites arbitrary enforcement. *Cf. Kolender v. Lawson*, 461 U.S. 352, 357-61 (1983) (finding statute which authorized arrest of individuals who did not provide "credible and reliable" identification to a police officer to be unconstitutionally vague, because it "fail[ed] to establish standards by which the officers may determine whether the suspect has complied with the . . . identification requirement"). Article 120(b)(3) does not require a person to arbitrarily determine how impaired another person must be before they are too impaired. Rather, it requires a person to determine if a sexual partner is capable of consenting. Again, the scienter requirement serves to narrow the sweep of the statute and to guide both prosecutors and fact finders. A successful prosecution does not depend on a trial counsel's or panel's subjective sense of how impaired is too impaired. Rather it depends on proving that an accused knew, or reasonably should have known, that the other person was incapable of consenting. This is a clear standard that provides reasonable guidance to prosecutors and fact finders, and does not invite arbitrary or discriminatory enforcement.

Because Article 120(b)(3)(A) provides a person of ordinary intelligence fair notice of what conduct is proscribed and does not invite arbitrary or discriminatory enforcement, we hold that it is not facially unconstitutionally vague.

6

2. *As applied challenge*

In addition to arguing that Article 120(b)(3) is facially vague, the appellant argues that the statute is vague as applied to him because he could not have discerned that his conduct with LH was criminal. He argues that the record contains no direct evidence that LH passed out, was unconscious, or was otherwise unresponsive. He further argues that LH's testimony is consistent with her having experienced a fragmentary blackout. Even if LH had been so intoxicated that she was unable to remember at least some of what happened, she may have still been capable of consenting to sexual conduct. The appellant then argues that if LH had been in a blackout instead of asleep or unconscious, "there is no way for a person of common intelligence to determine when an intoxicated person's ability to consent is sufficiently 'impaired' that sexual conduct becomes a crime."[7] We disagree with this view of the statute as applied to the appellant's case.

The appellant again misconstrues the statute by suggesting that it calls on a person to make an arbitrary judgment about another person's degree of impairment. It does not. Article 120(b)(3) proscribes sexual acts with people who are incapable of consenting to them.

With this view of Article 120(b)(3) in mind, we find that the statute properly informed the appellant that his conduct was proscribed. LH, an inexperienced drinker who had already used marijuana, vividly described how the alcohol she consumed rendered her senseless, like she was "slowly going under an anesthetic." When LH first began to regain consciousness, she found herself on the bed, with "tunnel vision," staring at the ceiling. LH described a gradual process of regaining consciousness. She still felt numb as she came to, and at first she was unaware that her pants and underwear had been removed. She recognized the appellant's face over her, but she was unaware that he was already penetrating her until she felt him thrust. In short, she was unable to consent to the sexual act both because she lacked the cognitive ability to appreciate the sexual conduct in question and because she lacked the ability to make or communicate an agreement to the sexual conduct—either one of which rendered her incapable of consenting. The appellant, who purchased the alcohol for LH, served it to her, and was present when she collapsed on the couch, would have known that LH was not capable of consenting to a sexual act. A fair reading of Article 120(b)(3) gives a person of reasonable intelligence notice that committing a sexual act with LH in that condition is proscribed by the statute.

---

[7] *Id.* at 10.

**B. Factual and legal sufficiency**

The appellant contends that the evidence is factually and legally insufficient to sustain his conviction for sexual assault. We disagree.

We review questions of legal and factual sufficiency *de novo*. Art. 66(c), UCMJ; *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002). The test for legal sufficiency is whether a rational trier of fact could have found that the evidence met the essential elements of the charged offenses, viewing the evidence in a light most favorable to the Government. *See United States v. Turner*, 25 M.J. 324, 324 (C.M.A. 1987). The test for factual sufficiency is whether, after weighing all the evidence in the record and allowing for the fact that we did not personally observe the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt. *Id*. at 325.

The appellant offers two theories of reasonable doubt as to his guilt: that LH lied about the sexual assault, and that LH may have been mistaken about whether the appellant had sex with her.

As to LH lying about the sexual assault, the appellant argues that she lied to her mother and the Marine Corps about her marijuana use and lied to her boyfriend about who was accompanying her to Fresno. He asserts that her trial testimony was inconsistent from one day to the next. Beyond incidents of untruthfulness, the appellant also argues LH had a motive to lie because she likely blamed the appellant for her disenrollment from the DEP.

Regarding LH being mistaken about having sex, the appellant points out that LH was under the influence of alcohol and marijuana on the evening in question, and that she had been drinking energy drinks. He also argues that she may have suffered from post-traumatic stress due to her earlier abuse. The combination of substances and traumatic history, he suggests, may have caused a "flashback" to her earlier abuse in the form of a dream.[8] Further, LH may have confused this dream with reality and concluded, incorrectly, that the appellant had intercourse with her. In support of this contention, the appellant points to LH's Article 32, UCMJ investigation testimony, with which she was cross-examined, and in which she said that upon waking the next day she wondered to herself whether she had dreamed the assault.

After reviewing the entire record, we are convinced of every element of sexual assault beyond a reasonable doubt and find that the appellant's sexual assault conviction is legally and factually sufficient.

LH's in-court testimony was compelling and substantially corroborated by other evidence at nearly every point one could reasonably expect corroboration. For example, LH stated that she went to Fresno with the

---

[8] *Id*. at 13.

appellant on 8 March 2013; the appellant's Payment and Leave Summary confirms that he took leave that day. The appellant's bank records reflect a point-of-sale debit card transaction at the convenience store where LH testified he bought alcohol, Red Bull, and cups. Facebook messages between the appellant and LH confirm that they had arranged for the appellant to pick up LH at her home, and LH's mother recalled the event. LH's claim that she was paid $200.00 in cash on 19 March 2013 corresponds to Facebook messages between LH and the appellant, and to the appellant's bank records. The appellant's girlfriend, who was staying in the same hotel as the appellant and planning to meet him, tried to contact the appellant at about 2345 on the night of the assault. The appellant did not answer his phone. A witness without any significant connection to LH remembered seeing her selling wrestling gear at the tournament. Most significantly, Facebook messages from LH to her boyfriend on the night of the assault corroborate that she was with the appellant, that he was aware that she was smoking marijuana, and that he was teaching her the drinking game they played that evening. All of this evidence was created before LH had any motive for retribution against the appellant.

We find the appellant's contention that the combination of alcohol, marijuana, and childhood sexual trauma caused LH to mistakenly believe the appellant assaulted her does not withstand examination.

LH's testimony revealed insight into what happened to her that evening, including insight into the limits of her perception and ability to remember. She convincingly described her awareness of the effect of the marijuana and alcohol, slowly anesthetizing her in a progressive debilitation until she was no longer able to remain awake on the couch. She also described the slow return of her senses on the bed, realizing that she was naked from the waist down and that the appellant was having sex with her.

We find that LH's history of sexual abuse as a young girl was unlikely to have confused her testimony regarding this evening. LH was molested as a young child, and the molestation did not involve intercourse. She testified that although she recalled being molested, that memory was not so significant that it tended to intrude on her daily thoughts. The different nature of the acts, the remoteness in time, and the lack of emotional prominence placed by LH on earlier molestation—demonstrated both by LH's testimony and that fact that the subject never arose during pretrial interviews—leave us convinced that LH did not confuse these memories. Most significantly, the next day LH had soreness in her vagina. LH described this soreness as similar to the soreness she experienced after she had sex with her boyfriend, only much more sore. This next-day soreness is inconsistent with a theory that LH had only imagined sex with the appellant. Although civilian defense counsel attempted to attribute the vaginal soreness

to an unrelated medical condition, LH credibly insisted that she could distinguish the discomfort caused by her condition from the internal vaginal soreness caused by intercourse.

## C. Instructional error

The appellant alleges that the military judge erred when he failed to instruct the members how they were permitted to use LH's testimony about her sexual abuse as a child. A military judge may instruct members regarding the proper use of evidence admitted under MIL. R. EVID 412 in order to avoid unfair prejudice to a party. *See United States v. Dorsey*, 16 M.J. 1, 8 (C.M.A. 1983) (noting that the military judge should have issued an "instruction limiting the use of [MIL. R. EVID 412] evidence," instead of excluding said evidence). Civilian defense counsel did not ask for such an instruction, so the military judge's failure to give one is reviewed for plain error. RULE FOR COURTS-MARTIAL 920(f), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). An error is plain error when it is plain and obvious, and when the error materially prejudiced a substantial right of the appellant. *United States v. Girouard*, 70 M.J. 5, 11 (C.A.A.F. 2011).

The appellant argues that the evidence of LH's earlier abuse was "sensational, inflammatory, and prejudicial," and that the members might have misused this evidence.[9] In particular, the appellant urges that members: may have used this evidence to conclude that the appellant was a sophisticated predator who carefully chose LH because of her status as a previous victim; may have been inappropriately swayed by sympathy for LH; may have punished the appellant for the actions of LH's prior abuser; or may have considered her status as a previous victim as an aggravating circumstance in sentencing.

We disagree that the judge committed plain error by not instructing members on how to use this evidence. Both sides thought that this evidence was relevant to its theory of the case and attempted to use it to their own advantage. Civilian defense counsel incorporated LH's prior sexual abuse into his theory of the case. He explored the incident in cross-examining LH and the Government's expert witness, suggesting that memories of the prior abuse might have caused LH to dream that she had been sexually assaulted. There is no obvious reason why this evidence would have confused the members. LH's disclosure of this evidence at trial was surprising, but not sensational. It is not information that would tend to inflame the members against the appellant. There is no evidence that the appellant would have known about this earlier abuse. None of the counsel knew about it before trial. The military judge's decision to not craft a special instruction covering

---

[9] *Id.* at 18.

this evidence was not a plain and obvious error—if it was error at all—and the issue was forfeited.

## D. Evidentiary foundation for Facebook messages

The prosecution introduced Facebook messages between LH and the appellant. These messages tended to corroborate LH's testimony concerning her agreement to travel to Fresno with the appellant to sell wrestling gear. In the messages, a Facebook account holder with the screen name Freddy Solis reminds LH that he had talked to her about getting part time work for her and arranges to pick up LH at her house. After the tournament, he arranges to drop off the money she earned.

The appellant alleges that the military judge erred by admitting these messages without sufficient evidence that the appellant was actually a party to the communication. We disagree.

A military judge's decision to admit evidence is reviewed for an abuse of discretion. "An abuse of discretion occurs when the trial court's findings of fact are clearly erroneous or if the court's decision is influenced by an erroneous view of the law." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citation omitted). An item of evidence may not be admitted unless its authenticity is demonstrated by evidence sufficient to support a finding that the matter in question is what its proponent claims. MIL. R. EVID. 901(a).

LH testified that she became Facebook friends with the appellant during the time he was her recruiter, and that his Facebook profile name was "Freddy Solis." Because financial problems caused her to lose the use of her cell phone, Facebook messages were a method she and the appellant used to communicate. LH examined the messages and recognized the appellant's picture on the profile. She recognized the content of the messages she sent to, and received from, the appellant. She also testified that after she arranged through these messages to have "Freddy Solis" pick her up to go to Fresno, the appellant showed up at her house at the designated time.

We have no difficulty finding that the prosecution presented sufficient evidence to support a finding that the appellant was the "Freddy Solis" behind the Facebook messages. The military judge did not abuse his discretion by admitting this evidence.

## E. Remaining assignments of error

We have considered the errors raised personally by the appellant and find that they are without merit. *See United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

### III. CONCLUSION

The findings of guilty and the sentence are affirmed.

Senior Judge PALMER and Judge MARKS concur.

For the Court

R.H. TROIDL
Clerk of Court