IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

---

THE STATE OF ARIZONA,
*Appellee*,

*v.*

EARL JEFFERSON CAUSBIE,
*Appellant*.

No. 2 CA-CR 2016-0106
Filed December 5, 2016

---

Appeal from the Superior Court in Pima County
No. CR20141960001
The Honorable Scott Rash, Judge

**AFFIRMED**

---

COUNSEL

Mark Brnovich, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Jonathan Bass, Assistant Attorney General, Tucson
*Counsel for Appellee*

Kuykendall & Associates, Tucson
By Gregory J. Kuykendall and Amy P. Knight
*Counsel for Appellant*

---

## OPINION

Judge Miller authored the opinion of the Court, in which Presiding Judge Vásquez and Chief Judge Eckerstrom concurred.

---

M I L L E R, Judge:

**¶1**      Earl Causbie appeals from his conviction for sexual assault, for which he was sentenced to 5.25 years' imprisonment. He argues the trial court erred by refusing his proposed jury instructions on the meaning of "without consent" in the context of alcohol consumption by the victim. Alternatively, he contends the statutory definition of "without consent" is unconstitutionally vague. For the reasons that follow, we affirm.

### Factual and Procedural Background

**¶2**      We view the facts and all reasonable inferences therefrom in the light most favorable to upholding the jury's verdict. *See State v. Inzunza*, 234 Ariz. 78, ¶ 2, 316 P.3d 1266, 1268-69 (App. 2014). In October 2011, the victim, J.D., went to a party at the home of G.J., whom she was just "in the beginning stages of kind of dating." When J.D. arrived, she did not know anyone at the party other than G.J., but she met some of the other guests as the evening went on, including Causbie and A.G.

**¶3**      Many of the guests were already intoxicated by the time J.D. arrived. Most or all of the guests drank whiskey shots during the evening, and others played drinking games. G.J. drank so much that he vomited and then retired to his upstairs bedroom, where he remained for the rest of the night even as the party continued. Over the course of the evening, J.D. drank about six shots of cinnamon-

flavored whiskey (about one ounce each), as well as one mixed drink containing a "three-second pour" of whiskey.[1]

¶4     Causbie flirted with J.D. throughout the party. He flicked and played with her hair, which she did not like. He also tried to hug her from behind—"she laughed but she pulled away . . . like she didn't like it," according to A.G. Causbie's advances made J.D. feel uncomfortable, as she expressed to A.G about four different times. At one point, Causbie asked J.D. to have a shot of whiskey with him, which she did. Then J.D. decided to send G.J. a photo of her breasts to "show him what he was missing." She lifted her shirt and bra and told Causbie to photograph her bare breasts and send the photo by text message to G.J., and he did. Causbie then called J.D. a "MILF"[2] and tried to kiss her, but she said "No, I don't kiss married men. I'm here, like, with [G.J.]."

¶5     J.D. then felt that it was time to go. She later said she had been "tipsy," but not "falling down drunk," at that point. She got her things and began to leave, but A.G. felt J.D. might have had a lot to drink and wanted to make sure she was okay to drive. With A.G. in the car, J.D. drove a short distance in a circle, which led her to conclude she was not sober enough to drive home safely. A.G. suggested J.D. spend the night on the couch at G.J.'s house. Causbie and another guest also came out to the car and encouraged J.D. to stay there that night. J.D. was "torn"—on the one hand she did not feel safe driving, but on the other hand, she did not feel safe staying over because Causbie's advances had given her the "heebie jeebies." J.D. expressed her concern to A.G., but A.G. reassured her that she would be safe if she stayed, so she did.

¶6     J.D. came back inside, at which point she vomited into a trash can. A.G. got J.D. some water and a blanket, and she lay down on a couch on her stomach "like she was ready to go to sleep." A.G.

---

[1]J.D. had not had anything to drink before arriving at the party.

[2]J.D. testified that she understood "MILF" to be a slang acronym for "A mother I'd like to f***."

saw J.D. close her eyes; she fell asleep "[a]lmost instantly." A.G. went upstairs, and when she came down about half an hour later to get a drink, J.D. was still asleep—she was "just out," A.G. explained. A.G. went back upstairs.

¶7 Sometime later, A.G. heard a male voice coming from downstairs, so she went down again. As A.G. came down the stairs, she saw J.D. on the couch where she had fallen asleep, lying on her back with her pants and underwear pulled down, her legs about shoulder-width apart, and her knees bent. Causbie was kneeling beside the couch and repeatedly "putting his hand up [J.D.'s] vagina very roughly." Although A.G. could not tell whether J.D. was awake or asleep when she saw her, J.D. did not appear to be participating in any way, nor was she making any sounds. In fact, J.D. had awakened around the time A.G. came downstairs or shortly before to the feeling of "a thrusting fist pain" or "pounding in [her] vagina area." She unsuccessfully attempted to push Causbie away.

¶8 A.G. walked past them into the kitchen before Causbie realized she was there. A.G. felt "nervous" because she had "just caught two people doing stuff, private stuff, and [she] didn't need to see that." She called out, "[J.D.], are you okay?" J.D. said no. After hearing this, A.G. "felt dirty" and went into the bathroom to wash her hands. When she came back out, Causbie, who had been kneeling beside J.D.'s midsection, was now kneeling beside her head.

¶9 A.G. asked Causbie to give them a moment alone, and he walked away without saying a word. A.G. asked J.D. if she was okay. J.D. was "confused, and was saying like, where am I? Like she didn't know what was going on." A.G. had to explain to J.D. where she was multiple times. J.D. said she thought Causbie had pulled down her pants, and asked A.G. to help her pull them back up, which she did. J.D. vomited into the trash can again. Then J.D. thanked A.G. and told her she was "a good girl," and went back to sleep.

¶10 The next morning, J.D. awoke to Causbie touching her shoulder. He told her he left her some water on the table, and then he left. J.D. left later, at about 7:30 that morning, and while driving

4

home, pulled over and vomited and urinated on herself. She found blood in her underwear later that day, although she was not menstruating. She also had bruises on her inner thighs, and pelvic pain that lasted for about a week. Feeling "dirty and ashamed," she took "probably like [twenty]" baths the day after the incident because she "just wanted everything gone from that guy." J.D. subsequently asked A.G. what had happened the night before because she could not remember everything. A.G. told J.D. what she had seen. J.D. then reported the incident to law enforcement.

**¶11** Causbie was charged with sexual assault in violation of A.R.S. § 13-1406, and the case proceeded to a jury trial at which he advanced a consent theory of defense. On the second day of trial, out of the jury's presence, court and counsel discussed jury instructions. The court suggested the following instruction regarding the absence of consent, which tracks A.R.S. § 13-1401(A)(7)(b)[3] almost verbatim:

> "Without consent" means the victim is incapable of consent by reason of mental disorder, mental defect, drugs, alcohol, sleep or any other similar impairment of cognition and such condition is known or should have reasonably been known to the defendant. "Mental defect" means the victim is unable to comprehend the distinctively sexual nature of the conduct or is incapable of understanding or exercising the right to refuse to engage in the conduct with another.

Causbie objected, and proffered an alternative instruction:

---

[3]A.R.S. § 13-1407 has been amended and renumbered since the date of the crime, but no substantive changes were made to the applicable subsections. *See* 2015 Ariz. Sess. Laws, ch. 209, § 2. We cite the current version of the statute throughout unless otherwise indicated.

> In order for you to find that [J.D.] could not consent to sexual activity due to her use of alcohol you must find beyond a reasonable doubt that she was unable to comprehend the distinctively sexual nature of the conduct or was incapable of understanding or exercising her right to refuse to engage in that conduct with another.

The court rejected Causbie's proposed instruction, overruled his objection, and selected its originally proposed instruction.[4]

¶12        The next day, Causbie requested another instruction to supplement, rather than replace, the court's "without consent" definition. Defendant's proposed supplemental instruction read: "The mere fact that [J.D.] may have consumed alcohol does not mean that she could not give consent to sexual activity." The court declined to give that instruction, stating it was "covered by the other instruction."

¶13        In its closing argument the state contended J.D. had lacked capacity to consent to the sexual intercourse because of both alcohol and sleep. The jury found Causbie guilty of sexual assault on a general verdict form, and he was sentenced as described above. Sections 13-4031 and 13-4033(A)(1), A.R.S., give us jurisdiction over his appeal.

---

[4]The state also requested a consent instruction. The state's proposed instruction provided: "'Without consent' includes, but is not limited to, any of the following," and then substantially followed the full text of A.R.S. § 13-1401(A)(7)(a)-(d). In this respect, it substantially followed State Bar of Arizona's Revised Arizona Jury Instructions ("RAJI") Statutory Criminal 14.01.07 (4th ed. 2012). However, the state's proposed instruction added a final sentence not found in the Revised Arizona Jury Instruction: "The words 'without consent' should be given their ordinary meaning." The court declined to give the state's instruction as well.

## Analysis

**Vagueness and Instruction Adequacy**

**¶14**        This case raises an issue not yet squarely addressed in our case law:  the appropriate jury instruction for incapacity to consent by reason of alcohol.  Causbie argues the phrase "incapable of consent by reason of . . . alcohol" in § 13-1401(A)(7)(b) is unconstitutionally vague [5] on its face [6] without a narrowing instruction or a more detailed definition.  His constitutional argument is intertwined with a state law contention that the statutory definition of "without consent" is insufficient.  Thus we address both arguments together.

**¶15**        We review de novo whether a statute is unconstitutionally vague.  *See State v. Mutschler*, 204 Ariz. 520, ¶ 4, 65 P.3d 469, 471 (App. 2003).  There is a strong presumption that a challenged statute is not unconstitutionally vague, *State v. Kaiser*, 204 Ariz. 514, ¶ 8, 65 P.3d 463, 466 (App. 2003), and it is the defendant's burden to show otherwise, *see State v. Okken*, 238 Ariz. 566, ¶ 9, 364

---

[5] The state argues Causbie's vagueness challenge is not properly preserved for review.  But Causbie expressly invoked the Fourteenth Amendment of the United States Constitution and Article II, Section 4 of the Arizona Constitution, arguing the court's instruction was unconstitutional because it left "the jury to on an ad hoc basis determine what being incapable of consent by reason of . . . alcohol . . . means" in a given case without a definite standard.  He raised this constitutional vagueness argument again in his motion for a new trial.  The issue is preserved.

[6]Although at oral argument defense counsel characterized the argument as an as-applied challenge, examination of the structure of the argument reveals it is actually a facial challenge.  Counsel maintained that Causbie's proposed instructions are required in *every* case involving incapacity to consent by reason of alcohol, not merely upon the facts of this particular case.  *See, e.g.*, *Sabri v. United States*, 541 U.S. 600, 609 (2004) (argument that "no application of the statute could be constitutional" is a facial challenge).

P.3d 485, 488 (App. 2015).  We review a court's refusal to give a requested jury instruction for an abuse of discretion,[7] but consider de novo whether the instructions given were legally sufficient when viewed as a whole.  *See State v. Miller*, 234 Ariz. 31, ¶ 41, 316 P.3d 1219, 1231 (2013).

**¶16**        To ensure due process of law, a criminal statute must not be "so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, ___ U.S. ___, ___, 135 S. Ct. 2551, 2556 (2015); *accord State v. Schmidt*, 220 Ariz. 563, ¶ 5, 208 P.3d 214, 216 (2009); *see* U.S. Const. amend. XIV, § 1; Ariz. Const. art. II, § 4.  But the requirement of fair and reasonable notice is not a requirement of "perfect notice or absolute precision of language." *State v. McDermott*, 208 Ariz. 332, ¶ 13, 93 P.3d 532, 536 (App. 2004), *quoting Kaiser*, 204 Ariz. 514, ¶ 9, 65 P.3d at 466.  A statute can give

---

[7]Causbie also contends we should view the evidence in the light most favorable to him as the party requesting jury instructions, citing *State v. Almeida*, 238 Ariz. 77, ¶ 2, 356 P.3d 822, 823-24 (App. 2015), and *State v. Nottingham*, 231 Ariz. 21, ¶ 14, 289 P.3d 949, 954 (App. 2012).  Those cases are distinguishable, however, because those defendants requested jury instructions that are appropriate only if reasonable evidence supports the theory they set forth. *See Almeida*, 238 Ariz. 77, ¶¶ 1, 9, 356 P.3d at 823, 824 (justification instruction, which is appropriate only upon slightest evidence of justification); *Nottingham*, 231 Ariz. 21, ¶¶ 4, 6, 289 P.3d at 951-52 (*Dessureault* instruction appropriate only upon evidence supporting suggestive pretrial identification process).  Here, Causbie brings a facial vagueness challenge to the alcohol incapacity statute underlying the instructions given.  Whether Causbie's requested instructions should have been given turns not on whether there was a sufficient quantum of evidence to support a particular theory therein, but rather on issues of constitutional and statutory interpretation explored below.  Therefore, we continue to view the facts and all reasonable inferences therefrom in the light most favorable to upholding the verdict.  *See Inzunza*, 234 Ariz. 78, ¶ 2, 316 P.3d at 1268-69.

fair notice of the conduct prohibited even if it can be interpreted in more than one way or it does not define a particular term. *Id.* Moreover, although there may be borderline cases in which it is difficult to decide whether or not certain conduct violated a statute, it does not follow that as a result that statute is unconstitutionally vague. *Kaiser*, 204 Ariz. 514, ¶ 9, 65 P.3d at 467; *see McLamb*, 188 Ariz. at 5, 932 P.2d at 270 ("If a statute gives notice of prohibited conduct, it is not void for vagueness 'simply because it may be difficult to determine how far one can go before the statute is violated.'"), *quoting State v. Phillips*, 178 Ariz. 368, 370, 873 P.2d 706, 708 (App. 1994).

**¶17**　　　　"A person commits sexual assault by intentionally or knowingly engaging in sexual intercourse . . . with any person *without consent* of such person."　A.R.S. § 13-1406(A) (emphasis added).　"Sexual intercourse" includes digital penetration of the vulva.　*See* A.R.S. § 13-1401(A)(4).　Under the statutory definition, "'[w]ithout consent' includes" a situation in which

> [t]he victim is incapable of consent by reason of mental disorder, mental defect, drugs, alcohol, sleep or any other similar impairment of cognition and such condition is known or should have reasonably been known to the defendant. For the purposes of this subdivision, "mental defect" means the victim is unable to comprehend the distinctively sexual nature of the conduct or is incapable of understanding or exercising the right to refuse to engage in the conduct with another.

§ 13-1401(A)(7)(b).　This list is not exhaustive, but merely illustrative—"[t]he word 'includes' [in the definition] is a term of enlargement which conveys the idea that conduct which does not fall within the listed behavior may also violate the statute." *State v. Witwer*, 175 Ariz. 305, 307-08, 856 P.2d 1183, 1185-86 (App. 1993).

¶18       Causbie first argues the term "consent" itself is unconstitutionally vague.  We disagree.  As we have observed, "[t]he words 'without consent' are easily understood as they are ordinarily used."  *Id.* at 308, 856 P.2d at 1186; *see also State v. Sharma*, 216 Ariz. 292, ¶ 15, 165 P.3d 693, 697 (App. 2007), *citing Random House Webster's College Dictionary* 2891 (1995) ("'[W]ithout consent' . . . generally mean[s] without agreement or permission."); *see also McDermott*, 208 Ariz. 332, ¶ 13, 93 P.3d at 536 (statute need not define every term to avoid vagueness).  Section 13-1401(A)(7) further clarifies what "consent" means in the sex offense context by providing numerous specific examples of its absence.  *See Witwer*, 175 Ariz. at 307-08, 856 P.2d at 1185-86.  The phrase "without consent" in § 13-1406(A) gives a person of ordinary intelligence fair notice of the conduct prohibited.

¶19       Causbie next argues the phrase "incapable of consent by reason of . . . alcohol," § 13-1401(A)(7)(b), is unconstitutionally vague as a whole.  He primarily relies on *State v. Johnson*, 155 Ariz. 23, 24-25, 745 P.2d 81, 82-83 (1987), a sexual assault case applying "mental disorder" in a prior version of the "without consent" definition.  When *Johnson* was decided, the definition included neither the term "mental defect" nor a definition thereof.  *See id.* at 25, 745 P.2d at 83; *see also Inzunza*, 234 Ariz. 78, ¶ 19 & n.4, 316 P.3d at 1272 & n.4, *citing* 1998 Ariz. Sess. Laws, ch. 281, § 2.  The state contended the victim could not consent because a trauma-induced mental disability rendered her incapable of consent.  *Johnson*, 155 Ariz. at 25-26, 745 P.2d at 83-84.  The court held the instruction the trial court gave, which said "'[w]ithout consent' means . . . [t]he other person could not consent because of a mental disorder," was not sufficiently narrow or particular as a matter of statutory interpretation (not vagueness doctrine).  *Id.* at 25-26, 745 P.2d at 83-84.  "[W]hen the state asserts that the victim was incapable of consenting due to a mental disorder," our supreme court held, "it must prove that the mental disorder was an impairment of such a degree that it precluded the victim from understanding the act of intercourse and its possible consequences."  *Id.* at 26, 745 P.2d at 84.  The court also ruled the evidence before it was insufficient as a matter of law to establish that the victim had such a mental disorder, even though a prior head injury had affected her memory,

concentration, and abstract thinking, and had rendered her "easily influenced." *Id.* The possibility the jury convicted Johnson based on that insufficient evidence, as permitted by the erroneous instruction, required reversal. *Id.*

**¶20** Causbie contends, without citation to authority, that there is "[n]o principled reason" to require more specific guidance about the necessary degree of cognitive impairment to show incapacity due to mental disorder than the degree needed to show incapacity due to alcohol. We disagree. *See, e.g.*, Allison C. Nichols, Note, *Out of the Haze: A Clearer Path for Prosecution of Alcohol-Facilitated Sexual Assault*, 71 N.Y.U. Ann. Surv. Am. L. 213, 233-34 (2015). First, we agree with the state that mental diseases and defects are more long-standing as compared to the immediate cognitive effects of alcohol.[8] Thus, constitutional concerns that arguably could arise in a mental disease or defect incapacity case are not implicated in the context of temporary incapacity due to alcohol.[9]

**¶21** Second, incapacity resulting from mental disease or defect is not a matter within the everyday knowledge and experience of most jurors. For this reason, the state will often rely on

---

[8]The record does not present and we do not address mental defects caused by long-term use of alcohol or circumstances where the amount of alcohol consumed in one setting causes permanent bodily damage.

[9] Significant constitutional issues might arise under an incapacity-to-consent instruction like that in *Johnson*, which is susceptible to an interpretation that individuals with mental disease or defect can *never* consent to sex. *See State v. Olivio*, 589 A.2d 597, 604-05 (N.J. 1991) (narrowly construing mental defect incapacity because mentally disabled people have fundamental rights regarding procreation and contraception); *see also Anderson v. Morrow*, 371 F.3d 1027, 1040-41 (9th Cir. 2004) (Berzon, J., concurring in part and dissenting in part) (analyzing intellectually disabled victim's capacity to consent under substantive due process framework).

expert testimony to explain the nature, extent, and implications of a victim's mental disorder or defect. *E.g.*, *Inzunza*, 234 Ariz. 78, ¶ 20, 316 P.3d at 1272 (psychiatrist and social worker testified regarding victim's capacity to consent). In contrast, jurors understand the temporary effects of alcohol on the mind and body from their common knowledge and experience. *State v. Randles*, 235 Ariz. 547, ¶ 17, 334 P.3d 730, 733-34 (App. 2014); *see also State v. Rivera*, 152 Ariz. 507, 514-15, 733 P.2d 1090, 1097-98 (1987). They are adequately equipped to assess whether a victim's cognition was so impaired by alcohol that he or she was unable to give legal consent at the relevant time. Unlike the jury in *Johnson*, which required additional guidance in order to gauge the "degree or severity" of the victim's mental disorder, 155 Ariz. at 25, 745 P.2d at 83, this jury required no additional guidance to determine whether J.D. lacked capacity to consent due to impairment caused by alcohol consumption.

**¶22**        Having distinguished *Johnson*, we find the reasoning in a recent decision of the U.S. Navy-Marine Corps Court of Criminal Appeals to be more applicable. In *United States v. Solis*, 75 M.J. 759 (N.-M. Ct. Crim. App. 2016), the defendant challenged as unconstitutionally vague a sexual assault statute similar to our own. It provided:

> Any person . . . who . . . commits a sexual act upon another person when the other person is incapable of consenting to the sexual act due to . . . impairment by any drug, intoxicant, or other similar substance, and that condition is known or reasonably should be known by the person . . . is guilty of sexual assault.

*Id.* at 763, *quoting* 10 U.S.C. § 920(b)(3). The defendant argued § 920(b)(3) is unconstitutionally vague on its face because it provides "no way for a person of common intelligence to determine when another person is impaired by alcohol such that they are incapable of consenting to a sexual act." *Solis*, 75 M.J. at 763. He emphasized the statute does not "draw the line" as to the threshold of impairment beyond which the victim was not capable of consenting.

*Id.* The court rejected the defendant's reading of the statute as myopic, focusing too much on the word "impairment" and not enough on the more central issue of incapacity to consent. *Id.* The court held the statute provides fair notice to a person of ordinary intelligence that it proscribes sexual conduct with a person who lacks the ability to consent. *Id.*; *see also McLamb*, 188 Ariz. at 5, 932 P.2d at 270 (fact that line-drawing may be difficult does not mean statute is unconstitutionally vague).

¶23 The *Solis* court further held § 920(b)(3) was not so standardless as to invite arbitrary enforcement. *Solis*, 75 M.J. at 763-64. It underscored that the statute "does not require a person to arbitrarily determine how impaired another person must be before they are too impaired," but rather to "determine if a sexual partner is capable of consenting." *Id.* at 764. Coupled with the requirement that the defendant knew or should have known of the victim's incapacity to consent, which further narrows the statute's scope and guides prosecutors and juries, the statute provides constitutionally definite enforcement standards, the court ruled. *Id.*

¶24 Like the statute at issue in *Solis*, §§ 13-1401(A)(7)(b) and 13-1406(A) provide sufficiently clear notice to a person of ordinary intelligence of what conduct is prohibited, namely, sexual intercourse with a person the defendant knows or reasonably should know is impaired by alcohol beyond the point of legal capacity to consent. *See Solis*, 75 M.J. at 763-64; *cf. Glover v. State*, 760 N.E.2d 1120, 1123-24 (Ind. Ct. App. 2002) (person of ordinary intelligence would understand that statute outlawing sexual intercourse with victim who is "unaware" proscribes sex with victim who is unconscious due to inebriation); *State v. Blount*, 770 P.2d 852, 855-56 (Kan. Ct. App. 1989) (person of common intelligence can readily understand what constitutes lack of consent due to fear of violence). In addition, § 13-1401(A)(7)(b) turns not on a certain threshold level of alcohol consumption or intoxication,[10] but rather on the victim's

_____

[10]The parties agree that the incapacity-to-consent statute need not furnish a quantitative measure, such as a certain breath alcohol content or number of drinks consumed, in order to avoid unconstitutional vagueness.

legal capacity to consent. *See Solis*, 75 M.J. at 764. It therefore does not invite arbitrary enforcement against intoxicated persons engaging in consensual sex. *See id.*

**¶25**　　　We hold that the phrase "incapable of consent by reason of . . . alcohol" in § 13-1401(A)(7)(b) is not unconstitutionally vague. Accordingly, the trial court did not abuse its discretion by instructing the jury with that phrase. The court also did not abuse its discretion by declining to define the phrase further via defendant's alternative jury instruction. *Cf. State v. Requena*, 41 P.3d 862, 866 (Kan. Ct. App. 2001) (Kansas statutory term "'incapable of giving consent' is one which people of common intelligence and understanding can comprehend and is not a term that requires definition" by way of more specific jury instructions).

**¶26**　　　Causbie cites case law from Massachusetts to support his argument that further instruction was required, pointing to the instruction given in *Commonwealth v. LeBlanc*, 921 N.E.2d 933, 938 (Mass. 2010). We do not find Massachusetts law persuasive on this issue, however, because Massachusetts applies a significantly different test for incapacity to consent than Arizona does. *See, e.g.*, *Commonwealth v. Urban*, 853 N.E.2d 594, 596-97 (Mass. App. Ct. 2006) (reaffirming standard that victim is incapable of consent only if "wholly insensible . . . in a state of utter stupefaction" from alcohol), *citing Commonwealth v. Burke*, 105 Mass. 376, 380-81 (1870).

**The Supplemental Instruction**

**¶27**　　　Causbie also argues that the state's failure to address his proposed supplemental instruction is an admission of error. Indeed, the answering brief argues only that the court did not err by refusing the proposed instruction, and does not address whether the court erred by refusing the supplemental instruction. Yet we will affirm the court's ruling if legally correct for any reason. *State v. Perez*, 141 Ariz. 459, 464, 687 P.2d 1214, 1219 (1984). And a court need not give a requested instruction if its substance is adequately covered by the other instructions. *State v. Almeida*, 238 Ariz. 77, ¶ 17, 356 P.3d 822, 826 (App. 2015).

¶28　　　The effect of Causbie's proposed supplemental instruction was to inform the jury that alcohol consumption in and of itself does not mean a victim cannot consent.[11] The trial court did not disagree with the factual proposition, but ruled the instruction it gave adequately covered that possibility. We agree. By their terms, both the statute and the instruction given focused on *incapacity to consent* as a result of consuming alcohol, not alcohol consumption itself. *See* § 13-1401(A)(7)(b); *cf. Solis*, 75 M.J. at 764. The court's instruction did not state or suggest that alcohol consumption by the victim is sufficient to prove the absence of consent. *Cf. Solis*, 75 M.J. at 764 (statute focuses on capacity to consent, not "subjective sense of how impaired is too impaired"). Nor did the prosecutor argue in closing that J.D. lacked capacity to consent merely because she had consumed alcohol.[12] Thus, the trial court did not abuse its discretion

---

[11] Causbie suggests, for the first time on appeal, that the prosecutor's statement in closing argument "[h]e knew it was without her consent because she couldn't drive home" improperly invited the jury to apply the "impaired to the slightest degree" standard from our driving under the influence (DUI) statute, A.R.S. § 28-1381(A)(1), to the incapacity issue. But the prosecutor never mentioned the DUI standard, and in context this comment was just one of a long list of facts she used to argue incapacity to consent. Causbie has not shown fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, ¶¶ 19-20, 115 P.3d 601, 607-08 (2005).

[12] The prosecutor did argue in closing that rapists often use alcohol because, among other reasons, "[a]lcohol renders a victim unable to resist." But the broader context of the argument made clear to the jury that the state did not mean J.D. could not consent merely because she had consumed alcohol. For instance, the state argued the intercourse at issue "was without consent because of the *amount* of alcohol [J.D.] had to drink that night." (Emphasis added). And as the prosecutor summarized her own closing argument: "[J.D.]'s inability to consent, [her] *level of intoxication*, her being passed out on the couch, [her] inability to resist, that does not equal consent." (Emphasis added). Causbie also argued his position in closing, saying "It is not the law in this state that when somebody is drunk, you can't have sex."

by declining the supplemental instruction. *See Almeida*, 238 Ariz. 77, ¶ 17, 356 P.3d at 826.

## Disposition

**¶29**        We affirm Causbie's conviction and sentence for the reasons stated.