# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————

### No. 201400409

———————————

### UNITED STATES OF AMERICA
Appellee

v.

### JOSHUA D. NEWLAN
Corporal (E-4), U.S. Marine Corps
Appellant

———————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel L.J. Francis, USMC.
For Appellant: Lieutenant David W. Warning, JAGC, USN; LT Christopher C. McMahon, JAGC, USN.
For Appellee:  Lieutenant Jetti L. Gibson, JAGC, USN; Captain Cory Carver, USMC; Lieutenant James M. Belforti, JAGC, USN.

———————————

Decided 13 September 2016

———————————

Before PALMER, CAMPBELL, and RUGH, *Appellate Military Judges*

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————

RUGH, Judge:

A general court-martial, consisting of members with enlisted representation, convicted the appellant, contrary to his pleas, of sexual assault and adultery, in violation of Articles 120 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 934 (2012). The members sentenced the appellant to one years' confinement, reduction to pay-grade E-1, and a bad-conduct discharge. The convening authority approved the sentenced as adjudged.

The appellant originally raised four assignments of error (AOE):  (1) that "impairment," as used in Article 120(b), UCMJ, renders that statute unconstitutionally vague; (2) that the military judge abused his discretion by providing the members an instruction which incorrectly defined "impairment;" (3) that one of the panel members was biased; and (4)

that the evidence is legally and factually insufficient to support the sexual assault conviction.

This court specified two additional issues for briefing: (1) whether the military judge abused his discretion when he denied a defense request for an instruction that explained the legal relevance of intoxication on the ability to consent; and (2) whether closing arguments of trial counsel describing the impact of alcohol on the victim's ability to consent were prejudicial error.

On 16 October 2015, the appellant submitted supplemental AOE (1) claiming that his adultery conviction denied him the equal protection of the law in violation of the Due Process clause of the Fifth Amendment to the United States Constitution.

On 10 November 2015, we returned the record for a hearing pursuant to *United States v. DuBay*, 37 C.M.R. 411 (C.M.A. 1968), to develop facts related to original AOE (3). A hearing was held on 10 February 2016, and subsequently, the *DuBay* judge returned his findings of fact and conclusions of law. On 1 April 2016, the appellant submitted supplemental AOE (2), asserting that the same panel member alleged in AOE (3) was dishonest regarding statements made during *voir dire* about the legal standard for "impairment."

Having considered the original and supplemental AOE and the specified issues, we affirm the adultery conviction. However, we find merit in original AOE (2), set aside the appellant's sexual assault conviction and his sentence, and authorize a rehearing.[1]

## I. BACKGROUND

On the evening of 16 November 2012, the appellant met Lance Corporal (LCpl) H for the first time at a bar and pool hall located not far from Marine Corps Air Station Miramar, California. The appellant and LCpl H spent the evening drinking, playing pool and "flirting" with each other before they left the bar together to "have a cigarette."[2]

After a 20-minute absence, Sergeant (Sgt) B, a close friend of LCpl H, left the bar to find LCpl H and accompany her home. As Sgt B walked into the parking lot, he noticed a parked truck "shaking around" with the windows fogged.[3] He looked inside the truck and saw the appellant, naked from the waist down, on top of LCpl H and thrusting his hips.

---

[1] In accordance with our holding in *United States v. Solis*, __ M.J. __, 2016 CCA LEXIS 477 (N-M. Ct. Crim. App. 2016), we summarily reject original AOE (1). Likewise, in accordance with our holding in *United States v. Hackler*, 75 M.J. 648 (N-M. Ct. Crim. App. 2016), we summarily reject supplemental AOE (1). We also note that CA's action was not taken within 120 days of the completion of trial as required by *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006). However, the appellant alleges no prejudice resulting from this delay, and we find none.

[2] Record at 712.

[3] *Id.* at 671.

Sgt B rapped on the window and called out, "it's time to go."[4] He then walked away from the truck and waited in the parking lot until the appellant emerged. When LCpl H failed to follow, Sgt B opened the passenger side of the truck and discovered her lying on her back, unconscious, and naked from the waist down. After some effort, Sgt B was able to rouse LCpl H and, with the appellant's assistance, put LCpl H's pants back on. LCpl H then sat on the curb where she vomited. Sgt B hailed a cab and returned with LCpl H to the barracks.

When they arrived, Sgt B supported LCpl H, who was having trouble standing and walking on her own, to his room, provided LCpl H some clothing, and left the room to allow LCpl H to change.[5] Once she did so, LCpl H climbed into Sgt B's rack and fell asleep crying. Growing concerned about the events he had witnessed, Sgt B called his supervisor and then notified civilian authorities.

Several hours later, LCpl H awoke confused, tired, and sick. Her genitals were sore as if she had engaged in sexual intercourse. Otherwise, she had no memory of what occurred in the truck. She initially declined to cooperate with authorities, to undergo a sexual assault examination, or to permit law enforcement to confiscate her clothing. However, after speaking to members of her command, LCpl H changed her mind and submitted to medical examination. During this examination, she informed the doctor that "she remember[ed] playing pool. . . and the next thing she remember[ed] was being in a truck and having someone knock at her window."[6]

The appellant was charged with two violations of Article 120(b). Specification 1 of Charge I alleged that he engaged in sexual intercourse with LCpl H while the appellant knew or reasonably should have known that LCpl H was unconscious or unaware the sexual act was occurring due to consumption of alcohol. The second specification, charged in the alternative, alleged that the appellant engaged in the same sexual intercourse with LCpl H but while she was incapable of consenting due to alcohol impairment and that such condition was known or reasonably should have been known by the appellant. The military judge informed the members that they could not convict the appellant of both specifications, and the members returned a verdict of not guilty to Specification 1 but guilty to Specification 2 of Charge I.

The definition of "impairment" was of central concern to the parties before and during trial.[7] The first discussion of "impairment" occurred before trial when the defense brought a

---

[4] *Id.* at 673.

[5] When LCpl H could not find her own room key, Sgt B took her to his room to sleep. *Id.* at 679-83.

[6] Prosecution Exhibit 8. Neither the victim nor the appellant claimed to have any memory of engaging in sexual intercourse.

[7] Article 120, UCMJ, does not provide a definition of "impairment."

motion to dismiss Specification 2 of Charge I as unconstitutionally vague, which resulted in the following:

> [Military Judge] MJ: "Impaired" is the term you're troubled by as being unconstitutionally vague?

> [Defense Counsel] DC: Yes, sir.

> MJ: Are DUI's therefore unconstitutional? . . . [Y]ou're saying a DUI, per se, that does not have a BAC of .08 merely charges impairment as defined under Article 111(c)(6)[, t]hat is unconstitutionally vague as well? Because impairment is pretty clear–clearly defined in Article 111(c)(6), right? Impairment means "[a]ny intoxication which is sufficient to impair the rational and full exercise of the mental or physical faculties." So the code's got a pretty good reference on what impairment means. . . . Because the government here is alleging that she was impaired by an intoxicant; right? Incapable of consenting because she was impaired by an intoxicant. They've charged it, now it's their burden. They've got to tee that up and they've got to prove that beyond a reasonable doubt. . . . That there was sufficient to impair the rational and full exercise of mental and physical faculties.[8]

Relying in part upon the statutory definition of impairment in Article 111, UCMJ, the military judge denied the defense motion to dismiss.

During *voir dire*, the defense counsel queried the panel venire on how they interpreted "consent" and "impaired" as it related to sexual assault. Many of the venire replied that they had been trained by Sexual Assault Prevention and Response (SAPR) personnel that if someone ingested any alcohol, that individual was no longer able to legally consent.[9]

---

[8] Record at 109.

[9] For example, comments from the venire included the following: Col C: "if you did have any form of impairment, that [sic] you can't have consent. You may -- the person would not be in the proper frame of mind to provide that consent." *Id.* at 432; LtCol Pr: "[w]hen a person is impaired, they are unable to give consent, regardless of what they say at the time." Appellate Exhibit XLII at 92; LtCol Ph: "I viewed that as part of the training . . . [that for someone to consent] they just should not be impaired." Record at 454; also, "A person impaired from alcohol use is incapable of giving sexual consent." AE XLII at 180; Maj T: "A person no longer has the ability to give consent once alcohol has impaired their judgment." *Id.* at 183; Captain S: "You need sober consent, per the brief." *Id.* at 174; Captain Sa: "if there is alcohol involved, then there is no consent." *Id.* at 75; MSgt K: "if a person was under the influence of alcohol, even one drink, that person is not able to give consent to any sexual act." *Id.* at 83; MSgt D: "if a person has one drink of alcohol, they may be considered impaired, therefore, they may not be able to give consent." Record at 290; Sgt M: "once the victim has had one drink, there is no longer a legal consent." AE XLII at 80. LtCol Ph, Maj T, and MSgt D all served as members on appellant's court-martial.

As a result, the defense asked the subsequently-detailed military judge to reconsider the ruling on the motion to dismiss Specification 2 as unconstitutionally vague, arguing that the members had provided additional evidence on the term "impairment":

> DC:  I also have a vagueness motion, and we've heard repeated comments from the potential members. They don't know what impairment means, and they don't have an idea of whether it's one drink, two drinks, .08.
>
> . . . .
>
> MJ:  All right. Well, there is a definition of impaired that's in Article 111 of the UCMJ. And this same definition of impaired applies to 112a, as is indicated here. And it's Article 111, Paragraph (c)(6) states: 'Impaired' means any intoxication which is sufficient to impair the rational and full exercise of the mental or physical faculties." So, I mean, there is a definition that's included in the UCMJ of that phrase. Now, I realize, Article 120 doesn't necessarily use that definition, but if there is no definition that's in Article 120 itself, for this particular term, then we're supposed to turn to the Code to look at where it's been defined elsewhere. So it seems to me, and I will point out that in the [Military Judge's Benchbook]. . . they don't define the word "impaired" either. But it seems to me, that if we're looking for a definition of impaired, the best place to look would be another article under the Code, and that is the definition.
>
> DC:  So we're turning to an article involving drunk and reckless operation of a vehicle –-
>
> MJ:  Right, you're saying –-
>
> DC:  Very, very different from a sexual act.
>
> MJ:  Why? . . . [w]hy [would we] use a definition of impaired differently in 120, than what we would use under Article 111?

---

Not all of the members agreed with the information they received at SAPR training and the military judge concluded that the members' remarks described training that was focused on prevention, e.g., "if there's any amount of alcohol involved, it's better safe than to be sorry. So just assume that you can't give consent or receive consent if there's alcohol."  Record at 343.

To address this issue, the military judge instructed each of these members substantially as follows: "The accused is charged with certain offenses under the UCMJ, which require certain elements to be met. And those elements, at least certain terms under those elements, have legal definitions. So as you are – I mean eventually I will provide you all of those instructions. When I provide you those instructions, if you hear something that is inconsistent with what you heard in your SAPR training, do you agree to disregard what you heard during SAPR training and apply the law that I provide you?" *Id.* at 459-60. Every member agreed to do so.

DC:    Sir, they are inherently different acts. In defining impairment, it's complete[d] when driving a vehicle. People drink alcohol and they have sex. It's something that happens. People do not drink alcohol to drive a vehicle.[10]

The military judge denied the motion to reconsider.

At the close of evidence, trial defense counsel requested the following tailored instruction on the interplay between alcohol impairment and LCpl H's ability to consent:

One of the elements that the prosecution must prove beyond a reasonable doubt is that at the time of the alleged sexual act, [LCpl H] was incapable of consenting to the sexual act due to impairment by an intoxicant.

You are instructed that as a matter of law, an intoxicated person can consent to sexual activity. The mere consumption of an intoxicant, such as alcohol, does not necessarily render a person incapable of consenting to sexual activity. Persons who have consumed an intoxicant, such as alcohol, often exercise free will and make conscious decisions for which they are legally responsible. This is true even if the person does not later recall making the decision or if they later regret the decision. One example of this is drunken operation of a motor vehicle.

The degree of an individual's intoxication is relevant to determining if the person is capable of consenting to sexual activity. However, as a matter of law, there is no point of intoxication where a person is legally incapable of consenting to sexual activity. Put differently, the prosecution must affirmatively prove beyond a reasonable doubt that [LCpl H] was in fact incapable of consenting to the alleged sexual act. If you believe that [LCpl H] did consent, then the prosecution has failed to meet its burden and you must find the accused not guilty. Further, even if you do not believe that [LCpl H] consented, but you believe that [LCpl H] was capable of consenting at the time of the alleged sexual act, then the prosecution has failed to meet its burden and you must find the accused not guilty.

You must totally disregard any training you may have received regarding consumption of alcohol and sexual activity, as that training does not accurately reflect the law. You must follow only my instructions on this issue in your deliberations.[11]

The defense requested this instruction because they believed the words "incapable of consent" and "impairment" were insufficiently defined. The defense argued that "[i]t's vital and the members need further explanation to clarify alcohol, especially as it relates to –

---

[10] Record at 347-48.

[11] AE LXVII at 3-4.

well, alleged sexual acts."[12] This was so "in light of the hours of SAPR training that has been received where they've been instructed regarding intoxication and alleged sexual assaults. This [requested instruction] provides some clarity or for more – actually direction other than what they seem to have received."[13]

The military judge declined to provide the defense instruction, opting instead to adhere to the Military Judge's Benchbook:

> I'm just going to give the standard [Benchbook] instruction. I think that's the safest bet. That way–and you all can argue, if you're going to argue based upon what the elements are and what the definitions are, but as far as trying to describe to the members how consent and intoxication and all of that might relate to each other and go contrary to what the [Benchbook] has, I'm not going to do that. I'm just going to go with what the [Benchbook] has. . . . It's not to say that you are wrong. You certainly can argue the elements on that. I'm just not comfortable giving an instruction that differs from the [B]enchbook.[14]

The military judge also informed the parties that he intended to provide the members the definition of "impaired" found in Article 111(c)(6), UCMJ: "'[I]mpaired' mean[s] any intoxication which is sufficient to impair the rational and full exercise of the mental or physical faculties."[15]

The defense objected, arguing that such a definition would imply that "even the slightest consumption of alcohol could cause a person to be impaired."[16] When asked why the definition of "impairment" under Article 111, UCMJ, would be any different for "any other offense under the code," the defense repeated the argument provided to the previous military judge: "it's just a different mental acuity that it takes to drive a vehicle and the rationale behind not driving a vehicle while intoxicated to protect the general public, I feel that this is a more strict definition of 'impairment' than what should be applied to an Article 120."[17]

---

[12] Record at 1077-78.

[13] *Id.* at 1078.

[14] *Id.* at 1078-79.

[15] MANUAL FOR COURTS-MARTIAL, UNITED STATES (2102 ed.), Part IV, ¶ 35(c)(6).

[16] Record at 1075.

[17] *Id.*

The trial counsel opposed the defense objection to the definition and the military judge decided to provide it, stating that he was concerned that the members would eventually ask him for such a definition:

> So, by me providing this up front, it eliminates the possibility, probability, high probability that they're going to come back and I'm going to have to provide it later. So, at this point I understand, defense, your argument on that, but the term 'impaired' is a common definition under the code, and so, I see no reason why it shouldn't have the same definition for an Article 120 offense as it would for any other offense under the code.[18]

The military judge then instructed the members as follows on the relevant portion of Specification 2:

> In order to find the accused guilty of Specification 2 of Charge I, you must be convinced by legal and competent evidence beyond a reasonable doubt:
>
> One, . . . the accused committed a sexual act upon [LCpl H], to wit: Penetrating her vulva with his penis; and
>
> Two, that the accused did so at a time when [LCpl H] was incapable of consenting to the sexual act due to impairment by an intoxicant, to wit: Alcohol, and that condition was known or reasonably should have been known by the accused.[19]
>
> . . . .
>
> "Consent" means a freely given agreement to the conduct at issue by a competent person.
>
> An unconscious person cannot consent to a sexual act.
>
> "Impaired" means any intoxication which is sufficient to impair the rational and full exercise of the mental or physical faculties.
>
> The inability to remember because of intoxication is called "alcoholic amnesia" or "blackout." A person in such a condition could still form the intent to do a certain act. Whether a person suffered a blackout is only one of the factors you should consider when deciding the extent and effect, if any, of the individual's intoxication.[20]

---

[18] *Id.* at 1076-77; AE LXVI at 2. However, in ruling on a separate motion to dismiss for unlawful command influence, the military judge recognized that "there is a danger [that] . . . members could use those expert opinions that were expressed during [SAPR] training in evaluating this evidence in this case." Record at 371.

[19] Record at 1105.

[20] *Id.* at 1105-06.

. . . .

SAPR training. When evaluating the evidence in this case and the credibility of witnesses, you can only judge this case based upon the evidence admitted during this trial, these and other instructions on the law that I have provided you during the trial, and your own conscience. You shall not use anything you learned during SAPR training or any similar training in evaluating the evidence or the credibility of the witnesses in this case. As a result, during your deliberations, there can be no discussion among you or other comparison between the evidence you have heard in this case and what you may have been told in SAPR training.[21]

Other than informing the members that an "unconscious person cannot consent to a sexual act," the military judge neither defined nor elaborated on "incapable of consent," nor did he specifically instruct them that "one drink means you can't consent" was an erroneous statement of the law.

## II. DISCUSSION

### A. Instructional Error[22]

The appellant argues that the military judge abused his discretion by failing to provide an "accurate, complete, and intelligible statement of the law when instructing the members."[23] The government counters that the instructions were not confusing and were otherwise proper.

Whether the members were properly instructed is an issue we review *de novo*. *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008). While the military judge has wide discretion in choosing the instructions to give, the instructions must provide an "accurate, complete, and intelligible statement of the law." *United States v. Behenna*, 71 M.J. 228, 232, (C.A.A.F. 2012). Instructions should be "tailored to fit the circumstances of the case," RULE FOR COURTS-MARTIAL 920(a), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2102 ed.), Discussion, and provide "lucid guideposts" to enable the court members to apply the law to the facts. *United States v. Buchana*, 41 C.M.R. 394, 396-97 (C.M.A. 1970).[24]

---

[21] *Id.* at 1114.

[22] Raised as original AOE (2).

[23] Appellant's Brief of 16 Mar 2015 at 9.

[24] *See also Ober*, 66 M.J. at 405 ("The military judge has an independent duty to determine and deliver appropriate instructions."); *United States v. Dearing*, 63 M.J. 478, 479 (C.A.A.F. 2006) (noting that "[i]t is a basic rule" that military judges provide instructions "sufficient to provide necessary guideposts for an informed deliberation on the guilt or innocence of the accused") (internal quotation omitted); *United States v. Curry*, 38 M.J. 77, 81 (C.M.A. 1993) (finding reversible error where the military judge gave confusing and misleading instruction on defense of accident); *United States v. Westmoreland*, 31 M.J. 160, 163-64 (C.M.A. 1990) (noting that ""the military judge "must bear the

We assess the military judge's instructions "'as a whole to determine if they sufficiently cover the issues in the case and focus on the facts presented by the evidence.'" *United States v. Maxwell,* 45 M.J. 406, 424 (C.A.A.F. 1996) (quoting *United States v. Snow*, 82 F.3d 935, 938-39 (10th Cir. 1996)). Any doubt as to how the members may interpret the instructions must be resolved in favor of the accused. *United States v. Williams,* 3 M.J. 12, 13, (C.M.A. 1977) (*per curiam*).

Article 120(b)(3)(A), UCMJ, does not prohibit engaging in sexual acts with a person who is drunk or impaired by alcohol. Put more plainly, mere impairment is no more the standard under Article 120(b)(3)(A), UCMJ, than the SAPR-perpetuated "one drink and you can't consent" axiom is the standard.[25] And litigants and military judges who fixate solely on the term "impairment" do so at their peril.[26]

Instead, the statute establishes a required *level* of impairment. In other words, sexual acts are prohibited only when the person's impairment rises to the *level* of rendering him or her "incapable of consenting to the sexual act." Art. 120(b)(3)(A), UCMJ.

"Consent" is a "freely given agreement to the conduct at issue by a competent person." Art. 120(g)(8), UCMJ. A "competent person" is one who "possesses the physical and mental ability to consent." *United States v. Pease*, 74 M.J. 763, 770 (N-M. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 180 (C.A.A.F. 2016)).

An "incompetent" person—and thus one "incapable of consenting" for purposes of Article 120—is a person whose impairment rises to the level of depriving him or her of the "cognitive ability to appreciate the nature of the conduct in question or the physical or mental ability to make [or] communicate a decision about whether they agreed to the conduct." *Id*; *see also United States v. Solis,* __ M.J. __, 2016 CCA LEXIS 477, at 10-11 (N-M. Ct. Crim. App. 2016) ("A successful prosecution does not depend on a trial counsel's or panel's subjective sense of how impaired is too impaired. Rather it depends on proving that an accused knew, or reasonably should have known, that the other person was incapable of consenting.").

With this legal foundation laid, we conclude the military judge, while adhering to the Benchbook, nonetheless failed to provide the members an "accurate, complete, and intelligible statement of the law." *Behenna*, 71 M.J. at 232. This is so for several reasons.

---

primary responsibility for assuring that the [panel] properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law").

[25] Record at 1085.

[26] *See Solis,* 2016 CCA LEXIS 477, at 9 (helpfully warning that "the statue does not proscribe sexual acts with impaired people, but rather with people incapable of consenting to the conduct at issue because of their impairment"); *United States v. Corcoran*, No. 201400074, 2014 CCA LEXIS 901, unpublished op. (N-M. Ct. Crim. App. 23 Dec. 2014).

First, we concur with the appellant that the military judge erred in providing the members with the definition of "impairment" found in Article 111, UCMJ, which prohibits the drunken or reckless operation of a vehicle. While "words generally known and in universal use do not need judicial definition," *United States v. Nelson,* 53 M.J. 319, 321 (C.A.A.F. 2000) (citation and internal quotation marks omitted),[27] we are mindful of a military judge's authority to provide additional definitions when he or she believes it to be prudent. However, when deemed necessary, we see no reason to depart from the basic rule of statutory construction—"[i]f a word that should be defined in a statute is not, then its commonly accepted meaning is applied[.]"[28] Moreover, as we discussed in *United States v. Chambers,* 54 M.J. 834, 835 n.4 (N-M. Ct. Crim. App. 2001), the Article 111, UCMJ, definition of "impaired" is a term of art applicable only to that article. As is evident from trial counsel's closing arguments (discussed *infra*), instructing the members with terms such as "any intoxication sufficient" to impair the "rational and full exercise," amplified the risk that members would confuse the distinction between *any* impairment and impairment which was sufficient to render LCpl H "incapable of consenting."

We also emphasize here that the definition of impairment was not nearly as important as informing the members that the impairment must rise to the level of rendering LCpl H "incapable of consenting"—meaning that she was deprived of "the cognitive ability to appreciate the sexual conduct in question or the physical or mental ability to make [or] to communicate a decision" regarding that conduct to another person. *Pease,* 74 M.J. at 770.[29]

While military judges are encouraged to adhere to the Benchbook under normal circumstances,[30] their obligation to tailor the instructions to the particular facts and issues in a case is paramount.[31] Strict adherence to the Benchbook must give way to "lucid guideposts" when required.[32] Under the facts of this case, and in light of this court's

---

[27] S*ee also United States v. Payne*, 73 M.J. 19, 26 n.10 (C.A.A.F. 2014).

[28] SINGER, SUTHERLAND STATUTORY CONSTRUCTION §47.07 (7th ed. 2008)

[29] We recognize the appellant's trial took place prior to this court's decision in *Pease* and *Solis*. However, on direct review courts apply the law at the time of the appeal, not the time of trial. *See United States v. Mullins*, 69 M.J. 113, 116 (C.A.A.F. 2010).

[30] *See United States v. Riley,* 72 M.J. 115, 122 (C.A.A.F. 2013).

[31] *See United States v. Bigelow*, 57 M.J. 64, 67 (C.A.A.F. 2002) (holding that the military judge did not err when she instructed members on the "critical principles of the standard accomplice [testimony] instruction" instead of using "the standard [Benchbook] instruction, word for word"); *United States v. Hopkins*, 25 M.J. 671, 672 (A.F.C.M.R. 1987) (finding that the military judge did not err in providing a non-standard instruction on the effects of a bad-conduct discharge adjudged at a special court-martial which was more accurate than the standard Benchbook instruction).

[32] *See Curry*, 38 M.J. at 81 ("To the extent military judges rely blindly on the pattern instructions contained in . . . [the Benchbook] they may be doing so to the detriment of their records of trial.").

holdings in *Pease* and *Solis*, we find the military judge's instructions failed to provide the members with an accurate, complete, and intelligible statement of the law.

In the future, when asked to provide a definition of impairment as applicable to Article 120(b), UCMJ, a military judge could instruct the members that:

> "Impairment" is the state of being damaged, weakened or diminished. Impairment rendering someone "incapable of consenting" is that level of impairment which is sufficient to deprive him or her of the cognitive ability to appreciate the nature of the conduct in question or the physical or mental ability to make or to communicate a decision regarding that conduct to another person.[33]

Having found error, we now test for prejudice and review whether the error was harmless beyond a reasonable doubt. *United States v. Killion,* 75 M.J. 209, 214 (C.A.A.F. 2016). It is the government's burden "'to persuade the court that constitutional error is harmless beyond a reasonable doubt.'" *Id.* (quoting *United States v. Bush*, 68 M.J. 96, 102 (C.A.A.F. 2009)).

We first note that the erroneous definition of "impairment" may have compounded the legally-inaccurate proposition—that "one drink means you can't consent"—that some members received while attending mandatory SAPR training. While likely well-intentioned, these statements made during training generated a significant risk of skewing the panel's understanding of legal consent. Though these members were generally instructed to "not use [or discuss] anything you learned during SAPR training . . . in evaluating the evidence or the credibility of the witnesses in this case," a more tightly tailored and prompt statement of the law would have ameliorated any prejudicial impact generated by the legally-erroneous SAPR training.[34] Since such a statement was not provided, we are not convinced that any confusion created by the SAPR training was wholly eradicated and that it did not contribute to the subsequent prejudice resulting from the incorrect definition of "impairment."

Second, while the instructions informed the members that incapacity must be "due to impairment" of alcohol, the definition of impairment that followed created a confusing mix of terminology that risked members drawing the conclusion that "any intoxication . . .

---

[33] *See* Black's Law Dictionary (Second Pocket Edition 2001); *Pease*, 74 M.J. at 770; *Chambers*, 54 M.J. at 835 n.4.

[34] When confronted with similar circumstances during *voir dire*, we encourage military judges to provide an immediate curative instruction. Failing to do so forces the members to process the entire court-martial while potentially laboring under the erroneous belief, perhaps impacting the questions they decide to ask (or not ask), as well as the evidence they decide to request (or not request) to inform their deliberations.

sufficient to impair the rational and full exercise" of LCpl H's faculties rendered her incapable of consenting. While this court may be able to parse the terminology and untangle the legal standards embedded within the instructions, we will not presume that these members could.[35]

Finally, the trial counsel's statements during closing arguments continued to equate incapacity with any level of impairment:

> He [the military judge] also instructed you that 'impaired' means any intoxication which is sufficient to impair the rational and full exercise of the mental or physical faculties. And who's competent? Members, a mother walking down the aisles at the commissary, choosing what groceries to take off the shelf, thinking what am I going to make for dinner tonight, competent. You gentlemen sitting here today, competent. Marines walking around, doing their jobs, day to day stuff, they're competent. At some point though, people stop being competent. *Alcohol stops someone from being competent.* So, how do we know that here, in this case, [LCpl H] wasn't competent, she couldn't make that choice, she couldn't give that free agreement?[36]

Next, the trial counsel asserted that LCpl H was intoxicated when she departed the bar and, as a result, she was "someone who doesn't have the *full exercise of their rational and physical faculties, someone who can't make that choice to have sex, someone who can't consent.*"[37] Trial counsel then reiterated the fallacy that any level of alcohol impairment renders one incompetent to consent to sexual activity:

> [The witness] puts us at a minimum of six [drinks], including three shots, and that's just what she saw. At this point we are beyond the point where [LCpl H] could give that free agreement, *where she was competent, had the full exercise of her rational and physical ability. She's impaired members. She's impaired by alcohol and she can't consent to sex.*"[38]

Continuing later, trial counsel invoked the words of the court: "Now, the military judge has instructed you what the rules are . . . and *the rules say you cannot have sex with someone who's impaired by alcohol and, therefore, can't consent.[39]* The trial counsel then

---

[35] *See Curry*, 38 M.J. at 81 ("Even if we, as lawyers, can sift through the instructions and deduce what the judge must have meant, the factfinders were not lawyers and cannot be presumed to correctly resurrect the law.)"

[36] Record at 1127 (emphasis added).

[37] *Id*. at 1128 (emphasis added).

[38] *Id*. (emphasis added).

[39] *Id*. at 1174 (emphasis added).

stated: "[s]lurring, balance issues, reaction issues, walking issues. This is someone showing signs of impairment. Sober adult watching it knows [LCpl H] is impaired by alcohol, and right there, you get spec 2."[40]

Finally, the trial counsel's concluding statements informed the members that:

> [I]t's time to uphold that oath. It's time to follow the law as the judge instructed you, to take those definitions of "consent," something that is freely given by a competent person. *It's time to take that definition of "impaired.".* . . By the definition given to you of "impaired," by the definition given to you of "consent," by the law given to you by the military judge, apply the testimony about the number of drinks and about all the symptoms that were observed. It doesn't matter that a blacked out person can still drink and had a conversation (inaudible) because the sober adult watching this whole thing evolve, sees all of these symptoms. The sober[,] prudent adult[,] that reasonable person knows *this is someone impaired by alcohol and cannot consent because they're not a competent person at this point.*"[41]

Trial counsel's uncorrected comments significantly increased the risk that the members, some of whom had already been exposed to identical, uncorrected SAPR training, would believe that any impairment from alcohol alone legally rendered LCpl H incapable of consenting.

Considering these circumstances, we are left with grave doubts regarding the impact that the instructional error may have had on the appellant's conviction for sexual assault.[42] We are therefore not persuaded that the error was harmless and will set aside the appellant's conviction as to this charge.

## B. Biased or Dishonest Member[43]

We next address the appellant's argument that Master Sergeant (MSgt) D, a member on the appellant's court-martial, was biased or dishonest during *voir dire* regarding his beliefs about the presumption of innocence.[44]

---

[40] *Id.* at 1175.

[41] *Id.* at 1186-87 (emphasis added). No objection was lodged. Nor was any curative instruction provided in response to any of the trial counsel's comments.

[42] *See United States v. Hartley,* 36 C.M.R. 405, 412 (C.M.A. 1966) (holding that where instructions are sufficiently confusing to at least raise a "reasonable doubt" as to whether the members "properly unders[tood] and utilized the correct standard for its findings" then "such doubt must be resolved in favor of the accused").

[43] Raised as original AOE (3) and as supplemental AOE (2).

During group *voir dire*, the military judge instructed the members that the appellant was presumed innocent and that "[t]he fact that charges have been preferred against this accused and referred to this court for trial does not permit or support any inference of guilt."[45] The military judge later asked the members whether "any of you formed or expressed an opinion concerning the guilt or innocence of the accused." MSgt D indicated that he had not. Later, MSgt D responded that he could "presume [the accused] is absolutely innocent of any wrongdoing" and that he believed that "the mere fact that he is here today in this court martial is no indication that he is guilty of anything."[46] Neither side challenged MSgt D.

Approximately nine months after the appellant's trial, MSgt D was again subjected to *voir dire* in an unrelated court-martial for spousal and child abuse—*United States v. Felixcaro*. During this subsequent trial, MSgt D was asked why he had a "visceral" response to the charge sheet. He replied:

> Just the feeling that I got. The person doing—taking the charges for what they are, just reading them straight, what comes to mind is:  I'm reading acts of a coward. So it's just a reaction to—not saying that the person is guilty, but reaction that somebody would do something like that I have [a] strong reaction and—if somebody does something like that, sir.[47]

The trial counsel then tried to rehabilitate MSgt D by asking him to refer back to the appellant's case:

> [MSgt D] MBR:  The Newlan case I want to say there was one—two or three specific occasions and it was the night the event "X" happened. They were at the bar. They went outside. And this is what happened. In this case, I read a multitude of times where the person is doing the same thing or something to that effect. So it—again, it just gives me a feeling of somebody dealing with somebody weaker and just being a coward about it.
>
> [Trial Counsel] TC:  Uh-huh. And in your experience, for the Newlan case, did you necessarily think that, okay, [the appellant] was there so he must

---

[44] In supplemental AOE (2), the appellant also asserts that MSgt D was dishonest as to his understanding of the level of impairment required to convict the appellant of sexual assault. Although we strongly agree with *DuBay* judge's finding that, "MSgt [D] did not omit any information intentionally or unintentionally," ultimately, MSgt D's understanding of "impairment," and thus the supplemental AOE, is rendered moot by our decision on original AOE (2). AE XCI at 2.

[45] Record at 402.

[46] *Id.* at 419.

[47] AE LXXXV at 27.

have done something wrong. He must have done—or at least he's guiltier than I am sitting here.

MBR: Well, I certainly believe if he made it all the way here, there was some decisions made. Because I haven't made it to that seat. So I would assume there was some decisions made that were wrong. Because that's the difference[—]Why I am in this seat and [the appellant] was in that seat in that case.[48]

Without opposition, the military judge excused MSgt D from further participation in the subsequent court-martial.

At the *DuBay* hearing, MSgt D was questioned on the apparent incongruity of his answers given during the two disparate *voir dire* sessions. He responded:

So when the charges were made—I answered the question honestly as I did with Felixcaro which brings me here today which was, "Can you look at his case [a]t his evidence and assume that he's innocent and be impartial in your decision?" Yes, I could. Now, in Felixcaro, "Can you look at the evidence and be impartial?" No, because I have an initial reaction to the charges. So the Marine serves—his case would be looked at in a fair manner and as a member of the panel, can I do that? Honestly, sir, no, I could not. That's the answer that I gave.[49]

The *DuBay* judge followed up:

MJ: So you just—you think that having already sat through it and heard it and rendered a decision on it and then being asked about it months later was coloring how you were viewing it in hindsight?

MBR: Absolutely. I mean, it would be foolish to say that the—reading the charges and looking at the evidence and having experienced reaching a verdict, having experienced reaching a sentence is not going to affect my views on it on the future. It's—it'll be, I think, a little bit irrational to think that it wouldn't affect me in the future and how I view things and the comments that I make.

. . . .

MJ: As you sit there and think about that time and your frame of mind that you were in at that time and the presumption of innocence that the law

---

[48] *Id*. at 26-27.

[49] *DuBay* Record at 17.

requires that you presume regardless of the fact that he's sitting where he's sitting that you presume him to be innocent[?]

MBR:  Yes, sir.

. . . .

MJ:  Is that how you felt at the time or did you feel like—

MBR:  That is exactly how I felt at the time, sir. Otherwise, I would've stated during the questioning that I have reservations about being there like I did with Felixcaro.[50]

Based on these responses, the appellant asserts that MSgt D's statements raise three reasons why this court should set aside the findings:  (1) actual bias; (2) implied bias; and (3) untruthful responses.

*Voir dire* is a critical dimension of a criminal trial as it serves to protect an accused's right to impartial factfinders by exposing possible biases, both known and unknown, on the part of the jurors. The effectiveness of *voir dire* depends on members providing truthful information so that both judge and counsel can evaluate the members' qualifications and suitability for court-marital service. In this vein, the Court of Appeals for the Armed Forces (CAAF) has consistently emphasized member honesty during *voir dire* in order to permit a fair member selection process. *United States v. Mack*, 41 M.J. 51, 54 (C.M.A. 1994) (citing *United States v. Lake*, 36 M.J. 317, 323 (C.M.A. 1993) (explicitly rejecting "reticence" by court members)); *United States v. Rosser*, 6 M.J. 267, 273 (CMA 1979) (criticizing members' "lack of candor" that "falls far short of the full disclosure mandated by . . . general principles of military law")).

The Supreme Court has articulated a two-pronged test for determining if a new trial is required when an error arises from a juror's failure to disclose information in *voir dire*:  "[A] party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equipment v. Greenwood*, 464 U.S. 548, 556 (1984). Although *McDonough Power* is a civil case, the CAAF has applied this rule to courts-martial.[51]

We will adopt the findings of fact of the *DuBay* judge unless they are clearly erroneous. *United States v. Wean*, 45 M.J. 461, 463 (C.A.A.F. 1997).

In his findings of fact, the *DuBay* judge found that "MSgt D was emphatic in his responses that he was capable of following the law regarding the presumption of innocence

---

[50] *Id*. at 28-29.

[51] *See United States v. Sonego*, 61 M.J. 1, 3-4 (C.A.A.F. 2005).

and that he did in fact presume the appellant to be innocent."[52] He also found that MSgt D "did not omit any information intentionally or unintentionally," that his usage of the words "wrong" and "decisions" within context "did not equate to criminal wrongdoing or a predisposition towards guilt," and that is was "clear that MSgt [D] had previously presumed the appellant to be innocent in his case and felt he could be impartial in that instance."[53] We do not find these facts to be clearly erroneous and thus conclude that the appellant has failed to demonstrate that MSgt D answered dishonestly on any of the three occasions on which he was questioned.

Having determined that MSgt D's responses were truthful, we must now determine whether his expressed beliefs on the presumption of innocence would require his removal "in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." R.C.M. 912(f)(1)(N). This rule encompasses both actual and implied bias. *United States v. Clay,* 64 M.J. 274, 276 (C.A.A.F. 2007). Although actual bias and implied bias are not separate grounds for challenge, they do require separate legal tests. *Id.* Challenges for both actual and implied bias are based on the totality of the circumstances. *United States v. Terry*, 64 M.J. 295, 302 (C.A.A.F. 2007). The burden of establishing the basis for a challenge is on the party making the challenge. *United States v. Daulton*, 45 M.J. 212, 217 (C.A.A.F. 1996) (citing R.C.M. 912(f)(3)).

"Actual bias is personal bias that will not yield to the military judge's instructions and the evidence presented at trial." *United States v. Nash*, 71 M.J. 83, 88 (C.A.A.F. 2012) (citation omitted). The test for implied bias is objective. Viewing the situation through the eyes of the public and focusing on the perception of fairness in the military justice system, we ask whether, despite a disclaimer of bias, most people in the same position as the court member would be prejudiced. *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006). We ask whether there is too high a risk that the public will perceive that the accused received less than a court composed of fair and impartial members. *United States v. Wiesen,* 56 M.J. 172, 176 (C.A.A.F. 2001).

We decline to find bias in the context of this case in which there is no indication that MSgt D was unwilling or unable to yield to the military judge's direction and the evidence during the appellant's trial. Likewise, when viewed through the eyes of the public and focused on the perception of fairness in the military justice system, we conclude there is no risk that the public will perceive that the appellant received less than a court composed of fair and impartial members based upon MSgt D's responses.

---

[52] AE XCI at 2 (citation omitted).

[53] *Id.* at 2, 3.

### III. CONCLUSION

The appellant's convictions on Specification 2 of Charge I and of Charge I are set aside. His convictions on Charge II and its sole specification are affirmed. The sentence is set aside, and a rehearing on Specification 2 of Charge I and on the sentence is authorized.

Chief Judge PALMER and Senior Judge CAMPBELL concur.

For the Court



R.H. TROIDL
Clerk of Court